UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SPENCER TODD GEORGE, SR.,

                                  Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.
_____

<u>DECISION & ORDER</u>

18-CV-0791MWP

## **PRELIMINARY STATEMENT**

Plaintiff Spencer Todd George, Sr. ("George") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI").[1] Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 11, 13). For the

---

[1] At the administrative hearing, George, through counsel, moved to amend the alleged onset date to May 22, 2014. (Docket # 7 at 76). George indicated that he understood such a motion would effectively negate his application for disability insurance benefits ("DIB"), given that the new date would be after his date last insured. (*Id.*). In her decision, the ALJ acknowledged this request as "an implicit request to withdraw the hearing request [for DIB]" and indicated that she was satisfied that George "underst[ood] the effect of his request." (*Id.* at 22). Accordingly, the ALJ dismissed George's DIB application, and her decision addressed solely his claim for SSI. (*Id.* at 22-23). George does not challenge that portion of the ALJ's decision.

reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## DISCUSSION

I.     **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

3

> (5) if not, whether the claimant retains the [RFC] to perform
> any other work that exists in significant numbers in the
> national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.  ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that George had not engaged in substantial gainful activity since May 22, 2014, the amended alleged onset date. (Tr. 25).[2] At step two, the ALJ concluded that George had the severe impairments of "cervical degenerative disc disease[,] 'chronic pain syndrome,' with peripheral neuropathy/radiculopathy component[,] obesity[,] status-post August 2017 right carpal tunnel, cubital tunnel, right thumb, index, middle, ring, and small trigger finger releases[,] and status[-]post February 2016 left carpal tunnel, cubital tunnel, left thumb, index, middle, and ring trigger finger releases." (*Id.*).[3] The ALJ concluded that George also suffered from other impairments that were not severe. (Tr. 26). At step three, the ALJ determined that George did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 25-27).

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

[3] The ALJ seemingly and incorrectly associated George's left thumb trigger finger release with the procedure that took place in February 2016. George underwent left index, middle, and ring trigger finger release on February 1, 2016 (Tr. 475), and a separate surgery for his left thumb trigger finger on August 17, 2017 (Tr. 855).

4

The ALJ concluded that George retained the RFC to perform light work with certain limitations. (Tr. 27). Specifically, George was limited to lifting/carrying twenty pounds occasionally and ten pounds frequently, sitting six hours out of an eight-hour workday, and standing/walking six hours out of an eight-hour workday. (*Id.*). George could frequently (but not continuously or repetitively) push, pull, reach overhead, and perform fine gross manipulation. (*Id.*). In addition, the ALJ limited George to occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. (*Id.*). George was to avoid extremes of heat/cold, work hazards (such as dangerous moving machinery and unprotected heights), and concentrated exposure to pulmonary irritants, such as fumes, odors, gas, dust, and poor ventilation. (*Id.*). George was also to avoid fast-paced or high-production work. (*Id.*). Finally, George could tolerate only brief and superficial contact with others. (*Id.*).

At steps four and five, the ALJ found that George was unable to perform his past relevant work but that other jobs existed in the national economy that George could perform, including the positions of housekeeping/cleaner, packager, mail clerk, inspector, and machine tender. (Tr. 37-38). Accordingly, the ALJ found that George was not disabled. (Tr. 38-39).

### III. George's Contentions

George contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 11-1, 14). First, George argues that the ALJ improperly relied on the stale opinion of state consultative examiner, Hongbiao Liu ("Liu"), MD, in reaching the physical portion of the RFC determination. (Docket ## 11-1 at 17-19; 14 at 1-2). Second, George maintains that the ALJ erroneously based the RFC finding upon her lay interpretation of the medical record. (Docket ## 11-1 at 19-24; 14 at 2-4).

Finally, George asserts that the ALJ failed to evaluate the functional limitations associated with George's fibromyalgia and chronic pain syndrome and erroneously assessed George's subjective complaints. (Docket ## 11-1 at 24-30; 14 at 4-7).[4]

IV. **Analysis**

   A. **The ALJ's RFC Finding**

I turn initially to George's first two, related contentions. George maintains that Liu's May 30, 2015 consultative examination opinion – to which the ALJ assigned "some weight" – was stale given subsequent developments in George's medical record, which then left the ALJ without an up-to-date medical assessment of George's functional limitations. (Docket # 11-1 at 17-24). In asserting that Liu's 2015 opinion was stale, George focuses principally on three subsequent developments in the record: first, his diagnoses of, and three corrective surgeries for, bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, as well as trigger finger in his left thumb, index, middle, and ring fingers, and all fingers on his right hand; second, his diagnoses of fibromyalgia and peripheral neuropathy/radiculopathy; and third, his continued treatment for longstanding neck and back issues. (*Id.* at 17-19). In George's view, it was "error for [the ALJ] to rely on [Liu's] opinion in any capacity, as it was stale." (*Id.* at 18).

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Whitsett v. Berryhill*, 2019 WL 156261, *4 (W.D.N.Y. 2019) (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, 2018 WL 6715361, *5 (W.D.N.Y. 2018)); *Caswell v. Berryhill*, 2018 WL 4404578, *4 (W.D.N.Y. 2018) ("a stale medical opinion . . . is not

---

[4] All of these challenges relate to George's physical impairments, and George does not challenge any portion of the ALJ's determination relating to his mental limitations. Therefore, the Court will limit its analysis and discussion of the relevant medical evidence to George's physical impairments.

6

substantial evidence to support an ALJ's finding"). An opinion "may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." *Whitsett v. Berryhill*, 2019 WL 156261 at *4 (quotations omitted). "In other words, [while] the mere passage of time does not render an opinion stale[,] . . . significant developments in an individual's medical history after the examination might." *Vazquez v. Saul*, 2019 WL 3859031, *3 (W.D.N.Y. 2019) (citations and quotations omitted).

As mentioned above, the ALJ limited George to light work with various exertional, non-exertional, and environmental limitations. (Tr. 27). In reaching this conclusion, the ALJ gave "some weight" to Liu's May 2015 opinion, which was the most weight that the ALJ afforded to any opinion pertaining to George's physical limitations. (Tr. 35, 360-64).[5]

At the time of Liu's May 2015 internal medical examination, George reported a history of chronic neck and low back pain resulting from a work injury suffered in 2004. (Tr. 360). His pain level was a 7-8/10 and described as "constant, pressure, sharp," and he stated that he could lift five pounds, walk one half of a block, and that he needed to change positions after five minutes of sitting or standing. (*Id.*). In addition, George stated that cold weather made his pain worse, particularly in his hands and toes, manifesting in a numbness and tingling sensation. (*Id.*). Moreover, George had a history of asthma since 2014, which got worse with exposure to dust or smoke, and for which he used an inhaler daily. (*Id.*).

---

[5] In addition to Liu's 2015 opinion, the ALJ also gave "limited weight" to Liu's July 25, 2014 consultative opinion, which opined that George had "mild-to-moderate limitation[s] for prolonged walking, bending, kneeling, and overhead reaching." (Tr. 35, 846-51). The ALJ discounted the opinion "during the period issued, as no specific limitations [were] defined and no work precluding limitations [were] shown." (Tr. 35). The ALJ also assigned "minimal weight in the relevant period" to the August 4, 2006 opinion of registered occupational therapist Mark R. Orrange, who opined that George "demonstrated the ability to perform light physical demand level work[.]" (Tr. 35, 332). Furthermore, the ALJ gave minimal or limited weight to various statements by George's treatment providers throughout the record that George was "disabled" because those statements were either based on George's self-reports or were inconsistent with the record. (Tr. 35 (citing Tr. 408, 425, 444, 495-516, 660, 681, 728)).

7

Upon physical examination, George was in no acute distress, had normal gait and stance, used no assistive devices, and needed no help changing for the examination or getting on and off the exam table. (Tr. 361). He could not, however, perform heel and toe walking because of low back pain, could only squat 20% full because of low back pain, and had difficulty in his ability to rise from a chair. (*Id.*). George had limited range of motion in his cervical and lumbar spine and shoulders, but had full range of motion in his elbows, forearms, wrists, hips, knees, and ankles, and exhibited full strength in his upper and lower extremities. (Tr. 362). Liu reported that George had intact hand and finger dexterity and full grip strength bilaterally. (*Id.*).

Liu assessed diagnoses of chronic neck and low back pain, history of asthma, and anxiety and depression, and opined that George had a stable prognosis. (Tr. 363). Liu also opined that George had "moderate limitations for prolonged walking, bending, kneeling, and overhead reaching" and that he should "avoid dust and other irritating factors to limit asthma attack[s]." (*Id.*).

The ALJ discussed Liu's opinion in detail and determined to give it "some weight." (Tr. 29-30, 35). Regardless of the ALJ's characterization of the degree of weight he assigned, the ALJ clearly relied on Liu's opinion in reaching the RFC finding. Consistent with Liu's opinion, for example, the ALJ included restrictions in the RFC relating to George's limited ability to reach overhead, stoop, kneel, crouch, and crawl, and his need to avoid exposure to pulmonary irritants. (Tr. 27).

Liu's opinion contained no limitation regarding George's ability to use his hands. As his 2015 opinion makes clear, Liu was aware that George experienced numbness and tingling in his hands at the time of his examination, and a limited record had already developed regarding George's hand pain prior to May 2015. For instance, x-rays of both hands in December 2014

8

demonstrated "[m]ild arthritic changes of the basal joints of the thumbs" (Tr. 297), and Dr. Neha Dang ("Dang"), MD, with UBMD Internal Medicine Specialty, had been examining George for osteoarthritis in his hands as early as February 2015 (Tr. 311).

The vast majority of records pertaining to George's hand issues, however, relate to the period after May 2015, and those records demonstrate that his hand issues worsened after Liu's examination. On August 25, 2015, George underwent an electromyography ("EMG") conducted by Dr. James Czyrny, MD, which revealed "left cubital syndrome of mild severity." (Tr. 500-02). Beginning in August 2015, George reported to providers at University Orthopaedic Services that he was having difficulty buttoning shirts and that he was dropping objects. (*See*, *e.g.*, Tr. 495, 503, 508, 511, 514, 560). At a physical therapy appointment in September 2015, George stated that his hands tended to bother him "with prolonged use or gripping activities" and that he was limited in his ability to type or use a computer mouse. (Tr. 569).

On October 2, 2015, George presented to Dr. Joshua Jones ("Jones"), MD, at University Orthopaedic Services, with the chief complaint of bilateral hand pain and bilateral numbness in his small fingers and reported that he had "been having increasing symptoms in bilateral hands." (Tr. 408). George stated that he had "a lot of cramping when writing and c[ould] only write for a very short time before this beg[an]" and noted "weakness in grip strength." (*Id.*). Jones discussed with George a cubital tunnel release procedure for both hands, but wanted "to further look into [George's] wrist pain before proceeding with surgery." (Tr. 409). Jones also diagnosed George with Raynaud's phenomenon, which could be treated medically. (*Id.*). Hand x-rays performed by Jones at that time did not reveal evidence of fracture, dislocation, or significant arthritic changes. (Tr. 411-12).

George continued to report pain in his hands to his physical therapist through the fall and winter of 2015. (*See*, *e.g.*, Tr. 578, 581, 584, 590, 593). He noted that the pain seemed to worsen with colder weather. (*Id.*).

George followed up with Jones for bilateral hand pain, numbness, and tingling on December 8, 2015. (Tr. 413). In addition to continued pain, George began to experience "catching" in certain fingers, particularly his right ring finger and left middle and ring fingers. (*Id.*). Jones noted that, "clinically," George had bilateral carpal tunnel and bilateral cubital tunnel syndrome. (Tr. 414). MRI results from both wrists were "essentially normal," but, as mentioned above, the EMG showed "left-sided cubital tunnel syndrome." (*Id.*). George eventually decided to undergo "left endoscopic carpal tunnel release, left cubital tunnel release with possible transposition[,] as well as release of the left index, middle, [and] ring trigger fingers," but to "hold off on the right side [until] after the left-sided surgery depending on how he d[id]." (*Id.*). On February 1, 2016, Jones performed this procedure on George's left hand. (Tr. 475).

On February 11, 2016, George presented to Frank Domnisch ("Domnisch"), PA-C, for post-surgery follow-up. (Tr. 519). George reported that he was "doing well," that his numbness and tingling in his left hand had "resolved," that he did not experience locking in his left hand or fingers, and that his "symptoms [were] much improved compared to preoperatively." (*Id.*). On examination, George exhibited mild swelling and stiffness in his left hand, but had good strength, and was instructed to continue therapy and home exercises. (Tr. 520). He presented with similar problems in his right hand, although the right side was "not nearly" as bad as the left side had been. (Tr. 519). Jones and Domnisch noted continued post-surgical

10

improvement through the fall of 2016, and Domnisch indicated several times that George could progress with activities "as tolerated." (*See*, *e.g.*, Tr. 522-23, 525-26, 528-30, 637-38).

On June 7, 2017, George had another appointment with Domnisch. (Tr. 831). Although he continued to recover from the February 2016 surgery, George reported that he was experiencing pain and locking in his left thumb and that he continued to be symptomatic in his right hand. (Tr. 831, 832 ("[George] does have a new onset left thumb trigger finger as well as persistent right carpal and possible cubital tunnel syndrome as well as evidence of early right thumb, index, middle, ring, small finger trigger finger")). George chose to proceed with a left thumb trigger finger release, and Domnisch noted that the right hand issues would likely require surgical intervention. (Tr. 833).

Jones performed left thumb trigger finger release on August 17, 2017 (Tr. 855), which again appeared to resolve the issue (Tr. 874-75 (August 28, 2017 follow-up appointment with Domnisch at which George reported that he was doing well and denied any locking or numbness in the left hand)). George continued to report numbness, tingling, and locking throughout his right hand and indicated his desire to proceed with surgery. (Tr. 874-75).

On August 31, 2017, Jones performed a right endoscopic tunnel release, right thumb, index, middle, ring, and small trigger finger release, and right cubital tunnel release. (Tr. 877). No follow-up treatment notes from this surgery are in the record.

As this overview demonstrates, following Liu's May 2015 examination, George developed an extensive medical history relating to bilateral hand issues, including new diagnoses, associated functional limitations, and three separate surgeries, which reveals a substantial deterioration in his bilateral hand condition after Liu rendered his opinion. This subsequent history calls into question the reliability and probative value of Liu's May 2015

11

evaluation of George's hands, which found intact hand and finger dexterity and full grip strength bilaterally and contained no limitations for George's use of his hands (Tr. 362-63), and suggests that Liu's functional use of his hands changed after Liu's examination. Accordingly, I find that Liu's opinion pertaining to his evaluation of George's hands is stale and that remand is required for the ALJ to obtain a more current medical assessment of George's functional capacity related to these impairments. *See*, *e.g.*, *Vazquez v. Saul*, 2019 WL 3859031 at *3-4 (remanding due to the ALJ's reliance on a consultative examiner's stale medical opinion; "the opinion [from the consultative examiner] is clearly stale with regard to [claimant's] bilateral carpal tunnel syndrome [that was diagnosed more than two years after opinion was rendered][;] . . . [consultative examiner] did not opine about any limitations in [claimant's] hand dexterity; instead, [consultative examiner] found '5/5' grip strength[;] . . . [s]o there was a significant deterioration in [claimant's] condition after [consultative examiner's] exam[;] [a]nd [nurse's] diagnosis and referral for treatment of carpal tunnel syndrome renders [consultative examiner's] opinion stale regarding possible limitations due to that ailment"); *Irby v. Comm'r of Soc. Sec.*, 2019 WL 6696778, *7-8 (W.D.N.Y. 2019) (finding that ALJ erroneously relied on stale opinions regarding claimant's hand functioning; "[consultative examiner's] evaluation was clearly stale with respect to the functioning of both hands: it was completed immediately after [claimant's] first surgery – so close that she could not evaluate [claimant's] right hand – and before [claimant's] left-hand surgery even took place"); *Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, *5 (W.D.N.Y. 2017) ("[a] stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding").

I find unpersuasive the Commissioner's argument that because the ALJ "assessed greater limitations [than opined by Liu] based on the later evidence, the ALJ did not 'rely' on

th[at] 'stale' opinion[] to craft her RFC assessment." (Docket # 13-1 at 7-8). Indeed, the ALJ apparently included restrictions in the RFC purportedly aimed at accommodating any functional limitations associated with George's hand impairments. (*See* Tr. 27 (limiting George to frequent but non-continuous/repetitive performance of fine and gross manipulation and stating that George should avoid fast-paced or high-production work)). As George points out, however, the ALJ did so without a medical opinion and seemingly based upon her lay interpretation of the medical evidence.

As a general matter, although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (alteration and citation omitted). Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner generally "may not make the connection himself." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (citation omitted).

Here, not only did Liu's opinion fail to account for George's deteriorating hand condition, but none of the subsequent medical evidence in the record addressed associated functional limitations. The ALJ was therefore left to interpret treatment notes and other pre- and post-surgery records, which the ALJ concluded supported "durational" limitations regarding George's use of his hands. (*See* Tr. 34 ("[t]he undersigned notes that the claimant had

durational limitations status-post February 2016 left carpal tunnel, cubital tunnel, ring, middle finger, and index trigger release; and status-post August 17, 2017 left thumb trigger finger release[;] [p]ost[-]hearing documentation reflects August 31, 2017, right carpal tunnel, cubital tunnel, ring, middle finger, and index finger release surgery, and to the extent the claimant follows up for surgery release *would appear* to be limitation for duration") (emphasis supplied) (citations omitted)). I find that such a conclusion without the aid of a medical assessment was improper; in fact, there are no post-surgical records at all regarding George's recovery from the August 31, 2017 procedure on his right hand. *See*, *e.g.*, *Irby v. Comm'r of Soc. Sec.*, 2019 WL 6696778 at *8 ("without any medical evidence about [claimant's] left-hand recovery, the ALJ [erroneously] reached an independent medical conclusion regarding the degree to which [claimant] had recovered from the surgery").

Underscoring the significance of these errors is the VE's testimony at the administrative hearing regarding the ability of an individual like George to perform fine and gross manipulation for the jobs identified at step five of the sequential analysis. Specifically, the VE indicated that a change in George's ability to perform fine and gross manipulation from "frequent[ly]" (which is reflected in the RFC) to "occasional[ly]" would "eliminate all the jobs [the VE identified] and really pretty much eliminate[] all unskilled work." (Tr. 81-82). Thus additional limitations resulting from George's hand impairments could have a significant effect on George's disability application.

In sum, I conclude that the ALJ based at least portions of her RFC finding on a stale opinion and on her own lay reading of the record and that the RFC is therefore not

14

supported by substantial evidence. Remand is thus required for the ALJ to obtain an up-to-date medical assessment of George's functional capacity in light of his several impairments.[6]

B.      **George's Remaining Contentions**

In light of my finding that remand is warranted for the ALJ to obtain additional opinion evidence, I decline to address George's remaining contentions. *See*, *e.g.*, *Vazquez*, 2019 WL 3859031 at *3 n.1 (remanding due to ALJ's reliance on a stale medical opinion; "[b]ecause the remaining issues may be affected by the ALJ's treatment of this case on remand, this [c]ourt does not reach them") (alterations, citations, and quotations omitted); *Girolamo v. Colvin*, 2014 WL 2207993, *9 (W.D.N.Y. 2014) ("[b]ecause further development of the record may affect the ALJ's determinations regarding [p]laintiff's credibility and capability, [p]laintiff's remaining arguments need not be considered at this time").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and George's motion for judgment on the pleadings

---

[6] This finding is based on my view that George's hand issues significantly deteriorated after Liu's examination and that the ALJ had no up-to-date medical opinion as to the effect these issues had on George's functional capabilities. I reject George's contention that the ALJ could not rely on Liu's opinion "in any capacity" because of George's subsequent history. (Docket # 11-1 at 18). In fact, George does not argue that the ALJ erred by relying on Liu's opinion as to environmental limitations – which are unrelated to George's hand impairments – and he points to no medical records after May 2015 calling into question this portion of the opinion or the ALJ's adoption thereof. In arguing that Liu's May 2015 opinion is stale, George also appears to rely on the fact that he had significant treatment for his back and neck after May 2015, including additional diagnostic testing, and the fact that he was diagnosed with fibromyalgia and neuropathy. Continued treatment alone, however, is insufficient to show that a medical opinion is stale. *See Palistrant v. Comm'r of Soc. Sec.*, 2018 WL 4681622, *6 (W.D.N.Y. 2018) ("[j]ust because the claimant continues treatment after an opinion is rendered, however, does not mean that the opinion is stale"). Moreover, the mere existence of a new diagnosis, without evidence of associated limitations, does not mandate a finding of a disabling impairment. *See Wahrmann v. Comm'r of Soc. Sec.*, 2014 WL 4626487, *5 (N.D.N.Y. 2014) ("[t]he presence of an impairment is not in and of itself disabling within the meaning of the [Social Security] Act") (alterations and quotations omitted). However, because remand is warranted to evaluate functional limitations associated with George's subsequent deterioration of his bilateral hand condition, I urge the ALJ to consider obtaining a current medical opinion addressing any functional restrictions associated with George's neck and back impairments and fibromyalgia and neuropathy diagnoses.

**(Docket # 11)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 11, 2020